## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **CHRISTIAN L. GARRETT,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | **SA-20-CV-00748-XR** |
| **v.** | § | **SA-20-CV-01183-XR** |
| | § | |
| **NICOLAS ROSE, United States Deputy** | § | |
| **Marshal; UNITED STATES** | § | |
| **MARSHALS SERVICE; JAVIER** | § | |
| **SALAZAR, Bexar County Sheriff;** | § | |
| **BEXAR COUNTY SHERIFF'S OFFICE;** | § | |
| **AND BEXAR COUNTY,** | § | |
| | § | |
| | § | |
| **Defendants.** | § | |

## ORDER OF DISMISSAL

Before the Court are Plaintiff Christian L. Garrett's ("Garrett") Civil Rights Complaint,

supplement to the Complaint, Amended Civil Rights Complaint, and Response to Order for More

Definite Statement.[1] (ECF Nos. 1, 5, 8, 13). As to Defendants United States Marshals Service

("USMS") and United States Deputy Marshal Nicolas Rose ("Deputy Marshal Rose"), the Court

construes this action as brought pursuant to *Bivens v. Six Unknown Fed. Narcotics Agents*, 403

U.S. 388 (1971). As to Defendants Bexar County Sheriff Javier Salazar ("the Sheriff"), the Bexar

County Sheriff's Office ("BCSO"), and Bexar County, the Court construes the action as brought

---

[1] Garrett filed the Complaint in SA-20-00748-XR on June 23, 2020. (ECF No. 1). On September 28, 2020, he filed another Complaint which was designated as SA-20-01183-XR. On the same date Garrett filed the Complaint in SA-20-01183-XR, he filed that same document in SA-20-00748. (ECF No. 8). It was docketed in SA-20-00748-XR as an Amended Complaint. (*Id.*). The actions were consolidated pursuant to the Court's October 7, 2020 Order. (ECF No. 14). In that Order, the Court ruled that SA-20-00748-XR would be the lead case, all filings would be made only in that case, and SA-20-01183-XR would be administratively closed. (*Id.*) Accordingly, the Court will consider the "Amended Complaint" filed in SA-20-00748-XR not as an actual Amended Complaint superseding the original Complaint, but as the Complaint from SA-20-01183-XR. (ECF No. 8). Given this, in its review, the Court will consider the Complaint, the supplement to the Complaint, the "Amended Complaint," and Garrett's response to the Court's Order for More Definite Statement. (ECF Nos. 1, 5, 8, 13).

pursuant to 42 U.S.C. § 1983. Garrett is proceeding *pro se*, and the Court granted his Application to Proceed *In Forma Pauperis* ("IFP"). (ECF Nos. 2, 4). After due consideration, the Court orders Garrett's claims against the USMS **DISMISSED WITHOUT PREJUDICE FOR WANT OF JURISDICTION**. (ECF Nos. 1, 5, 8). To the extent Garrett's claims against Deputy Marshal Rose are brought against him in his official capacity, the Court likewise orders those claims **DISMISSED WITHOUT PREJUDICE FOR WANT OF JURISDICTION**. (ECF Nos. 1, 5, 8, 13). The Court further orders that to the extent Garrett's claims against Deputy Marshal Rose are brought against him in his individual capacity, those claims are **DISMISSED WITH PREJUDICE** for failure to state a claim upon which relief may be granted. (ECF Nos. 1, 5, 8, 13); *see* 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b). Finally, the Court orders Garrett's section 1983 claims against the Sheriff, the BCSO, and Bexar County **DISMISSED WITH PREJUDICE** for failure to state a claim upon which relief may be granted. (ECF Nos. 1, 5, 8); *see* 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b).

**BACKGROUND**

In 2018, a federal criminal complaint was filed against Garrett alleging he failed to register as a sex offender. *See United States v. Garrett*, No. 5:18-CR-00571-DAE-1 (W.D. Tex. July 17, 2018) (ECF No. 1). The affidavit supporting the criminal complaint was executed by Deputy Marshal Rose, who at that time was responsible for investigating sex offenders moving between states to determine if they were in violation of sex offender registration requirements. *Id.* In the affidavit, Deputy Marshal Rose averred that in 1997 Garrett had been convicted in Louisiana of aggravated incest of two minor females ages seven (7) and (12). *Id.* Garrett was sentenced to three years' confinement and ordered to register as a sex offender for life. *Id.* Deputy Marshal Rose

explained how he had come to determine Garrett had not registered in Texas since his return in 2018. *Id.*

Garrett was subsequently indicted in federal court for failure to register as a sex offender. *See United States v. Garrett*, No. 5:18-CR-00571-DAE-1 (W.D. Tex. Aug. 8, 2018) (ECF No. 11). Ultimately, pursuant to a plea agreement, Garrett pleaded guilty to the offense of failure to register as a sex offender, and the Court sentenced him to time served, five (5) years' supervised release, and forty–five days in a halfway house. *See United States v. Garrett*, No. 5:18-CR-00571-DAE-1 (W.D. Tex. Feb. 11, 2019) (ECF No. 31).

Approximately a month after he was sentenced, Garrett filed a letter with this Court in which he seemed to allege that the Court had sentenced him to more than simply time served based on a "message" from Deputy Marshal Rose to the Court in which he informed the Court that Garrett had been charged in Bexar County with violating *state* law regarding his failure to register as a sex offender. *See United States v. Garrett*, No. 5:18-CR-00571-DAE-1 (W.D. Tex. Mar. 22, 2019) (ECF No. 34). Garrett also claimed Deputy Marshal Rose contacted the Bexar County District Attorney's Office about Garrett's failure to register, resulting in his being detained in in state custody for two weeks. *Id.* Garrett alleged Deputy Marshal Rose failed to advise the Court that the state case was closed and his federal trial counsel "did not allow" him to inform the Court about it during sentencing.[2] *Id.* Garrett also claimed Deputy Marshal Rose "lied" to the Office of the United States Attorney about Garrett allegedly molesting his fifteen–year–old biological

---

[2] This Court's records show Garrett's sentencing hearing was held February 4, 2019, and judgment was rendered February 11, 2019. *See United States v. Garrett*, No. 5:18-CR-00571-DAE-1 (W.D. Tex. Feb. 11, 2019) (ECF Nos. 29, 31). However, the state charge alleging Garrett failed to register as a sex offender was not formally dismissed until February 15, 2019, several days after the sentencing hearing and rendition of judgment. https://search.bexar.org/Case/CaseSummary?r=2da25fa7-211a-4570-a4a6-75cf45215f9b&st=s&s=887652 &cs=&ct=&= (last visited May 28, 2021).

daughter. *Id.* Garrett believed that if the Court had known about Deputy Marshal Rose's actions, the sentencing "would have ended differently." *Id.*

According to Bexar County criminal court records, in 2019, a grand jury indicted Garrett in state court for the offenses of failing to register as a sex offender and continuous sexual abuse of a child. *See* https://search.bexar.org/Case/CaseSummary?r=2da25fa7-211a-4570-a4a6-75cf45215f9b&st=s&s=887652 &cs=&ct=&= (last visited May 28, 2021). Garrett was taken into custody and confined in the Bexar County Adult Detention Center ("BCADC"). *Id.* Garrett seems to contend these state–court charges arose from Deputy Marshal Rose's actions, suggesting the marshal lied to Bexar County authorities and tampered with evidence in an effort to have Garrett charged. (ECF Nos. 1, 5, 8, 13).

While confined in the BCADC, Garrett brought the present action against the USMS, Deputy Marshal Rose, the Sheriff, the BCSO, and Bexar County. (ECF Nos. 1, 5, 8). Garrett contends Deputy Marshal Rose violated his constitutional rights, fabricating and omitting evidence by altering a police report and lying to the federal court and state law enforcement officials, which resulted in an enhanced federal sentence and a state criminal charge. (ECF Nos. 1, 5, 8, 13). He also claims Deputy Marshal Rose presented a "closed" case to the Court in his federal prosecution, i.e., the Bexar County failure to register case. (ECF No. 13). According to Garrett, as a result of Deputy Marshal Rose's actions, he was subjected to illegal arrest, illegal transportation, and illegal detention by the Sheriff, the BCSO, and Bexar County. (ECF No. 1, 5, 8, 13). He specifically contends Deputy Marshal Rose's actions violated his Double Jeopardy rights under the Fifth Amendment. (ECF No. 13). Garrett contends the USMS also violated his constitutional rights by allowing Deputy Marshal Rose "to disobey a direct order which resulted in his actions."

(ECF Nos. 1, 5, 8). As relief for the alleged constitutional violations, Garrett seeks release from the BCADC, expunction of his state–court arrest, the right to exercise his right to renunciate his citizenship, a restraining order against Deputy Marshal Rose, and damages in the amount of $35,000,000.00. (ECF Nos. 1, 5, 8, 13).[3]

APPLICABLE LAW

A court may dismiss an IFP proceeding *sua sponte* pursuant to section 1915(e) of Title 28 of the United States Code ("the Code") if the court determines it is frivolous, malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B) (directing court to dismiss case filed *in forma pauperis* at any time if it is determined that action (i) is frivolous or malicious, (ii) fails to state claim on which relief may be granted, or (iii) seeks monetary relief against defendant who is immune). Such a dismissal may occur at any time, before or after service of process and before or after a defendant files an answer. *Shanklin v. Fernald*, 539 F. Supp.2d 878, 882 (W.D. Tex. 2008) (citing *Green v. McKaskle*, 788 F.2d 1116, 1119 (5th Cir. 1986)).

An action is frivolous where there is no arguable legal or factual basis for the claim. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). "A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges a violation of a legal interest which clearly does not exist." *Harper v. Showers*, 174 F.3d 716, 718 (5th Cir. 1999) (internal quotation and citation omitted). A complaint is factually frivolous when "the facts alleged are 'fantastic or delusional scenarios' or the legal theory upon which a complaint relies is

---

[3] All state charges against Garrett were dismissed and he is no longer confined in the BCADC; rather, he currently resides in California. (ECF No. 33); *see* https://search.bexar.org/Case/CaseSummary?r=2da25fa7-211a-4570-a4a6-75cf45215f9b&st=s&s=887652 &cs=&ct=&=.

5

'indisputably meritless.'" *Eason v. Thaler*, 14 F.3d 8, n.5 (5th Cir. 1994) (quoting *Neitzke*, 490 U.S. at 327–28).

When reviewing a plaintiff's complaint, the court must construe plaintiff's allegations as liberally, holding the plaintiff to less stringent pleading standards than those applicable to lawyers. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97,106 (1976)); *see Haines v. Kerner*, 404 U.S. 519 , 520–21(1972). However, a plaintiff's *pro se* status does not offer him "an impenetrable shield, for one acting *pro se* has no license to harass others, clog the judicial machinery with meritless litigation and abuse already overloaded court dockets." *Farguson v. MBank Houston, N.A.*, 808 F.2d 358, 359 (5th Cir. 1986). Nevertheless, district courts possess broad discretion when determining whether an IFP proceeding is frivolous. *Wesson v. Oglesby*, 910 F.2d 278, 281 (5th Cir. 1990) (citing *Wilson v. Lynaugh*, 878 F.2d 846, 849 (5th Cir. 1989); *Green*, 788 F.2d at 1119). Such broad discretion is necessary because the Federal Rules of Civil Procedure are inadequate to protect the courts and defendants from frivolous litigation from indigent prisoners. *Green*, 788 F.2d at 1119 (quoting *Jones v. Bales*, 58 F.R.D. 453, 463 (N.D. Ga. 1972), *aff'd by adopting district court's reasoning*, 480 F.2d 805 (5th Cir. 1973)).

**APPLICATION**

### A. Claims Against the USMS and Rose in His Official Capacity

Garrett alleges a violation of his civil rights by the USMS, a federal agency. (ECF Nos. 1, 5, 8). He also alleges a violation of his civil rights by Rose, but it is impossible to determine whether those claims are brought against Rose in his official capacity or in his individual capacity. (ECF Nos. 1, 5, 8). Because these claims are brought against a federal agency and a federal employee, they are brought pursuant to *Bivens*, not section 1983 of Title 28 of the Code.

*Compare Bivens*, 403 U.S. at 388, *with* 42 U.S.C. § 1983. Section 1983 applies only to civil rights claims against *state* actors; it does not apply when civil rights claims are brought against federal actors. *Izen v. Catalina*, 398 F.3d 363, 367 n.3 (5th Cir.), *reh'g and reh'g en banc denied*, 130 F. App'x 705 (5th Cir. 2005). In other words, a *Bivens* action and a section 1983 action are "coextensive proceedings; the 'only difference' being that the former involves an action against federal actors and the latter against state actors." *Id.* (quoting *Evans v. Ball*, 168 F.3d 856, 863 n.10 (5th Cir. 1999), *overruled on other grounds*, *Castellano v. Fragozo*, 352 F.3d 948–49 n. 36 (5th Cir. 2003)). As described by the Supreme Court, a *Bivens* action is the "federal analog to suits brought against state officials under" section 1983. *Ashcroft v. Iqbal*, 556 U.S. 662, 675–76 (2009).

1. *USMS*

"Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *FDIC v. Meyer*, 510 U.S. 471, 475 (1994). Sovereign immunity is jurisdictional in nature, and therefore, absent waiver of sovereign immunity, this Court lacks jurisdiction over Garrett's claims against the USMS, a federal agency. *See id.* A waiver of sovereign immunity "'cannot be implied but must be unequivocally expressed.'" *United States v. Testan*, 424 U.S. 392, 399 (1976) (quoting *United States v. King*, 395 U.S. 1, 4 (1969)). The plaintiff bears the burden of showing unequivocal waiver of sovereign immunity. *St. Tammany Parish, ex rel. Davis v. FEMA*, 556 F.3d 307, 315 (5th Cir. 2009).

Garrett has not alleged, and the Court is not aware, that the USMS has waived its right to sovereign immunity by means of statute or other method with regard to *Bivens* claims seeking monetary or injunctive relief. (ECF Nos. 1, 5, 8). Thus, with regard to Garrett's *Bivens* claim against the USMS, the Court finds it is barred by the doctrine of sovereign immunity, rendering

such claim subject to dismissal for want of jurisdiction. *See Meyer*, 510 U.S. at 475; *see also Sheid v. United States Marshal Serv.*, No. 08-CV-3295, 2009 WL 1750379, at *7 (S.D. Tex. June 17, 2009) (holding USMS protected by sovereign immunity), *aff'd*, 379 F. App'x 345 (5th Cir. 1999), *cert denied*, 562 U.S. 1223 (2011).

Moreover, even if the USMS is not protected by sovereign immunity, it is not subject to a *Bivens* action. Although a plaintiff may bring a *Bivens* action against federal officials in their individual capacities for alleged constitutional violations, a plaintiff may not bring a *Bivens* action against the United States or its agencies. *See Zuspann v. Brown*, 60 F.3d 1156, 1160–61 (5th Cir. 1995) (citing *FDIC v. Meyer*, 510 U.S. 471, 484–86 (1994)); *see also Correctional Servs. Corp. v. Malesko*, 534 U.S. 61, 69 (2001) (recognizing that in *Meyer*, Supreme Court unanimously declined invitation to extend *Bivens* to permit suit against federal agencies). Thus, because the USMS is a federal agency, Garrett has failed to state a claim for which relief can be granted with regard to the USMS. *See* 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b).

### 2. *Rose in His Official Capacity*

As noted above, the Court cannot determine whether Garrett has sued Rose in his official or individual capacity. (ECF Nos. 1, 5, 8, 13). To the extent he seeks relief against Rose in his official capacity as a Deputy United States Marshal, such claim is also barred by sovereign immunity.

Suits against government officers in their official capacities are considered suits against the government itself. *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985). In other words, official–capacity suits "represent only another way of pleading an action against an entity of which an officer is an agent." *Id.* (quoting *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658,

690 n.55 (1978)). Thus, any claims against Rose in his official capacity are merely claims against the USMS. *See id.* Accordingly, for the same reasons Garrett's claims against the USMS are barred and subject to dismissal for want of jurisdiction, so are any claims against Deputy Marshal Rose in his official capacity. *See Meyer*, 510 U.S. at 475; *Zuspann*, 60 F.3d at 1160–61.

### B. Claims Against Rose in His Individual Capacity

Garrett is possibly alleging a *Bivens* claims against Rose in his individual capacity. (ECF Nos. 1, 5, 8, 13). Garrett seems to contend Rose fabricated or tampered with evidence by altering a police report, lying to local officials, and failing disclose information to local law enforcement officials and the federal court, which led to the state criminal charges and confinement, as well as an enhanced federal sentence. (ECF Nos. 1, 5, 8, 13). He also claims the deputy marshal's action resulted in defamation, harassment, illegal arrest, illegal transportation, and illegal detention by the Bexar County defendants. (ECF Nos. 1, 5, 8, 13). According to Garrett's response to this Court's Order for More Definite Statement, Garrett is claiming that Deputy Marshal Rose's actions violated his Double Jeopardy rights under the Fifth Amendment. (ECF No. 13).

As the Fifth Circuit recently reiterated, *Bivens* claims are generally limited to three areas: (1) manacling a plaintiff in front of his family in his home and strip–searching him in violation of the Fourth Amendment, *see Bivens*, 403 U.S. at 389–90; (2) discrimination based on the basis of sex by a Congressman against a staff member in violation of the Fifth Amendment, *see Davis v. Passman*, 442 U.S. 228, 248–49 (1979); and (3) failure to provide medical attention to an asthmatic federal inmate in violation of the Eighth Amendment, *see Carlson v. Green*, 446 U.S. 14, 18 (1980). *Oliva v. Nivar*, 973 F.3d 438, 442 (5th Cir. 2020). Virtually any other *Bivens* allegation is

9

considered "'new context.'" *Id.* (quoting *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1857 (2017)). Courts must keep in mind the Supreme Court's admonition that expansion of the *Bivens* cause of action has "become 'a disfavored judicial activity.'" *Hernandez v. Mesa*, 140 S. Ct. 735, 742 (2020) (quoting *Abbasi*, 137 S. Ct. at 1957). With the admonition in mind, the Court must apply a two–part test in determining whether to extend *Bivens*. *Id.* at 743.

The first part of the test requires the Court to inquire as to whether the request to extend *Bivens* "involves a claim that arises in a new context or involves a new category of defendants." *Id.* A context is "new" if it is "different in a meaningful way from previous *Bivens* cases decided by" the Supreme Court. *Abbasi*, 137 S. Ct. at 1859. The second part of the test requires the Court to inquire as to "whether there are any special factors that counsel hesitation about granting the extension." *Hernandez*, 140 S. Ct. at 743.

Garrett asserts his *Bivens* claim against Deputy Marshal Rose in his individual capacity under the Double Jeopardy provision of the Fifth Amendment, claiming the deputy marshal's actions subjected him to a second prosecution in state court for failure to register as a sex offender.[4] (ECF No. 13). This claim is nothing liked the *Bivens* trilogy, and the Court therefore concludes Garrett's claims arise in a new context, meeting the first part of the text. *See id*; *Abbasi*, 137 S. Ct. at 1859.

---

[4] To the extent Garrett bases his Fifth Amendment–Double Jeopardy claim on the state charge of continuous sexual abuse of a child, the Court finds such claim baseless. Garrett was not charged in federal court with continuous sexual abuse of a child. *Compare United States v. Garrett*, No. 5:18-CR-00571-DAE-1 (W.D. Tex. Aug. 8, 2018) (ECF No. 11), *with* https://search.bexar.org/Case/CaseSummary?r=2da25fa7-211a-4570-a4a6-75cf45215f9b&st=s&s=887652&cs=&ct=&=. Moreover, the state charge of continuous sexual abuse of a child was dismissed. The only offense for which Garrett was potentially subject to prosecution in both state and federal court was failure to register as a sex offender. *Id.*

As to the second part of the test — "whether there are any special factors that counsel hesitation about granting the extension" — the most important question is "who should decide whether to provide for a damages remedy, Congress or the courts?" *Hernandez*, 140 S. Ct. at 750. In the recent case of *Watkins v. Three Administrative Remedy Coordinators of the Bureau of Prisons*, No. 19-40869, 2021 WL 2070612, at \*2 (5th Cir. May 24, 2021), the Fifth Circuit had to determine whether a federal inmate's First Amendment claim that federal jailers tampered with his meals in retaliation for filing grievances against prison officials was viable under *Bivens*. The Fifth Circuit first recognized that Watkins's claims were "nothing like the *Bivens* trilogy" and therefore, arose in a new context. *Id.* The Fifth Circuit then held the matter presented special factors counseling hesitation, specifically that nothing the Prison Litigation Reform Act ("PRLA"), which governs suits by inmates, provided "for a standalone damages remedy against federal jailers." *Id.* at \*3 (citing *Abbasi*, 137 S. Ct. at 1865). The Court then determined its holding was underscored by the fact that the Supreme Court has never recognized a *Bivens* claim under the First Amendment, *see Reichle v. Howards*, 566 U.S. 658, 663 n.4 (2012), and had previously rejected a First Amendment retaliation *Bivens* claim for federal employees, *see Bush v. Lucas*, 462 U.S. 367, 368 (1983). *Id.* This Court finds *Watkins* instructive.

Like Watkins, Garrett brough this action under the PRLA. (ECF No. 2). Just as the PRLA does not provide for a standalone damages remedy against federal jailers, it does not provide a standalone damages remedy against federal marshals. *See* 42 U.S.C. § 1997e; *cf. Watkins*, 2021 WL 2070612, at \*3. Moreover, although the Supreme Court has recognized a *Bivens* cause of action under the Fifth Amendment, it has done so only in the context of a discrimination claim on the basis of sex by a Congressman against a staff member. *See Davis v. Passman*, 442 U.S. 228,

11

248–49. The Court is unaware of any case in which the Supreme Court or any other court has recognized a *Bivens* action against a federal marshal or other federal official under the Fifth Amendment based on a claim of Double Jeopardy.[5] Accordingly, this Court declines to extend *Bivens* to include a Fifth Amendment Double Jeopardy claim against a federal deputy marshal based on allegations the deputy marshal fabricated and omitted evidence or lied to the federal and state officials, resulting in allegedly duplicative state and federal charges. (ECF Nos. 1, 5, 8, 13).

Moreover, even if *Bivens* extends to the Fifth Amendment–Double Jeopardy claim asserted by Garrett, such claim is substantively unmeritorious. Garrett contends he was subjected to charges for the same offense in both state and federal court, i.e., failure to register as a sex offender. (ECF Nos. 1, 5, 8, 13). However, in *Gamble v. United States*, the Supreme Court cemented its prior holdings that under the dual–sovereignty doctrine, two offenses are not the same offense for double jeopardy purposes if prosecuted by different sovereigns. 139 S. Ct. 1960, 1964, 1980 (2019). In other words, "a State may prosecute a defendant under state law even if the Federal Government has prosecuted him for the same conduct under a federal statute." *Id.* at 1964. Accordingly, in this case, Garrett was subject to prosecution in both State and Federal court for failing to register as a sex offender without implicating the double jeopardy. *See id.* Additionally, Garrett was never prosecuted in State court for failing to register as a sex offender. Although Garrett was indicted, the State dismissed that charge, along with the charge of continuous sexual abuse of a child. *See* https://search.bexar.org/Case/CaseSummary?r=2da25fa7-211a-4570-a4a6-75cf45215f9b&st=s&s=887652 &cs=&ct=&=.

---

[5] *Cf. Treece v. Wilson*, 212 F. App'x 948, 950–51 (11th Cir. 2007) (holding *Bivens* did not extend to inmate's double jeopardy claim, among others, for alleged improper denial of Social Security benefits).

Finally, to the extent Garrett, who is still on supervised release for the federal offense, contends Deputy Marshal Rose's actions resulted in an enhanced federal sentence, i.e., the federal court imposed additional conditions beyond supervised release, that claim must be raised in a petition for writ of habeas corpus pursuant to section 2255 of Title 28 of the Code. *See* 28 U.S.C. § 2255. Under section 2255, a prisoner who contends the sentence imposed violated the Constitution or federal law may move to vacate, set aside, or correct the sentence. *Id.* The Court declines to construe this action as a petition pursuant to section 2255.

## C. Claims Against the Sheriff in his Official and Individual Capacities

It is unclear whether Garrett's claims with regard to the Sheriff were brought against him in his official capacity, his individual capacity, or both. (ECF Nos. 1, 5, 8, 13). No matter the capacity, Garrett's claims against the Sheriff are subject to dismissal.

### 1. Official Capacity

To the extent Garrett has brought his claims against the Sheriff in his official capacity, such claims are claims against Bexar County, which the Court addresses below, and subject to dismissal. *See Hafer v. Melo*, 502 U.S. 21, 27 (1991); *Brooks v. George Cnty., Miss.*, 84 F.3d 157, 165 (5th Cir. 1996).

### 2. Individual Capacity

Suits brought against a government official in his individual capacity seeks to impose personal liability upon that official for actions taken under color of state law. *See, e.g., Scheuer v. Rhodes*, 416 U.S. 232, 237–38 (1974). To establish personal liability in a section 1983 action, the plaintiff must allege the defendant was personally involved in the actions complained of or is responsible for the policy or custom giving rise to the alleged constitutional deprivation. *See*

13

*Alderson v. Concordia Parish Corr. Facility*, 848 F.3d 415, 420 (5th Cir. 2017) (holding that under section 1983, officials are not vicariously liable for conduct of those under their supervision, they are accountable for their own acts and for implementing unconstitutional policies that result in constitutional deprivations); *Jones v. Lowndes Cnty., Miss.*, 678 F.3d 344, 349 (5th Cir. 2012) ("A Section 1983 claimant must 'establish that the defendant was either personally involved in the deprivation or that his wrongful actions were causally connected to the deprivation.'"). A supervisor is not personally liable for his subordinate's actions in which he had no involvement.[6] *James v. Tex. Collin Cnty.*, 535 F.3d 365, 373 (5th Cir. 2008).

Garrett does not allege the Sheriff was personally involved in any of the acts or omissions he contends resulted in a violation of his constitutional rights or that the Sheriff is responsible for a policy or custom — official or *de facto* — that gave rise to any of the alleged constitutional deprivations. (ECF Nos. 1, 5, 8, 13). In the absence of an allegation that the Sheriff was personally involved in the alleged constitutional violations or responsible for a policy or custom that gave rise to such constitutional deprivations, Garrett has failed to state a claim upon which relief may be granted, mandating the Court dismiss such claims with prejudice. *See* 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b)(1)

### D. Claims Against the BCSO

The capacity of an entity to sue or be sued is determined by the law of the state in which the district court sits. *Paredes v. City of Odessa*, 128 F.Supp.2d 1009, 1013 (W.D. Tex. 2000) (citing FED. R. CIV. P. 17(b); *Darby v. Pasadena Police Dep't*, 939 F.2d 311, 313 (5th Cir. 1991)).

---

[6] There are limited exceptions to this rule, but none apply in this case. *See, e.g., Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 454 (5th Cir. 1994) (en banc) (holding that school officials can be held personally liable if their deliberate indifference allows subordinate to violate student's right to bodily integrity).

14

To be subject to suit, a department or office must enjoy a separate legal existence. *Id.* A separate legal existence is created only when the political entity that created the department or office has taken "'explicit steps to grant the servient agency with jural authority.'" *Id.* (quoting *Darby*, 939 F.2d at 313). In the absence of jural authority, the servient department, agency, or office lacks the capacity to be sued. *Id.*

Texas federal courts have consistently held entities without a separate jural existence are not subject to suit. *See, e.g., Batyukova v. Doege*, No. 5:19-CV-00391-JKP, 2019 WL 6699788, at *3 (W.D. Tex. Dec. 9, 2019) (holding BCSO not legal entity capable of being sued). Bexar County policymakers have not authorized the BCSO to enjoy a jural existence separate and apart from Bexar County. *See id.*; *Brown v. Bexar Cnty. Hosp. Dist.*, No. SA-15-CA-123, 2015 WL 3971388, at *1, n.1 (W.D. Tex. June 30, 2015) . Thus, to the extent Garrett seeks relief against the BCSO, the Court finds he has failed to a claim upon which relief may be granted. *See* 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b).

### E. Claims Against Bexar County

To establish section 1983 liability on the part of a county or municipality, a plaintiff must show that (1) an official policy, (2) promulgated by the municipal policymaker, (3) was the moving force behind the violation of a constitutional right. *Hicks–Fields v. Harris Cnty.*, 860 F.3d 803, 808 (5th Cir.), *cert. denied*, 138 S. Ct. 510 (2017); *see Spiller v. City of Texas City, Police Dep't*, 130 F.3d 167, 167 (5th Cir. 1997) (holding that "a plaintiff must initially allege that an official policy or custom" caused alleged constitutional deprivations); *see also Bd. of Cnty. Comm'rs Bryan Cnty., Okla.*, 520 U.S. 397, 403–04 (1997); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91 (1978). Garrett fails to allege the existence of an official policy, practice, or custom by

Bexar County relating to any of his alleged constitutional deprivations. (ECF Nos. 1, 5, 8, 13). Garrett has, therefore, failed to a claim upon which relief may be granted against Bexar County (or the Sheriff in his official capacity), mandating dismissal with prejudice. *See* 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b)(1).

## NO RIGHT TO AMEND

Generally, before dismissal of a section 1983 complaint, a *pro se* litigant should be afforded an opportunity to amend in an attempt to cure any deficiencies. *Neitzke*, 490 U.S. at 329; *Brewster v. Dretke*, 587 F.3d 764, 767–68 (5th Cir. 2009). Leave to amend is not required, however, if the *pro se* has already pleaded his "best case." *Brewster*, 587 F.3d at 768.

In this case, Garrett filed a Complaint, a supplement to the Complaint, and an Amended Complaint. (ECF Nos. 1, 5, 8). Thereafter, the Court rendered an Order for More Definite Statement with regard to Garrett's claims against Deputy Marshal Rose. (ECF No. 6). The claims against Deputy Marshal Rose in his individual capacity were the only claims asserted by Garrett that might have been subject to cure based on the facts and allegations. Garrett responded to the Court's Order for More Definite Statement, defining his claims against Garrett as arising under the Double Jeopardy Clause of the Fifth Amendment. (ECF No. 13). As discussed above, *Bivens* does not extend to those claims. The Court finds, based upon review of the Complaint, the supplement to the Complaint, the Amended Complaint, Garrett's response to the Order for More Definite Statement, and applicable law, that any attempt additional attempt by Garrett to amend would be fruitless — he has pleaded is best case under the facts. Accordingly, the Court need not provide him with an additional opportunity to amend prior to dismissal.

16

CONCLUSION

Based on the foregoing analysis, this Court finds Garrett's *Bivens* claims against the USMS and Deputy Marshal Rose in his official capacity must be dismissed for want of jurisdiction. As for Garrett's *Bivens* action against Deputy Marshal Rose in his individual capacity, it is subject to dismissal with prejudice for failure to state a claim upon which relief may be granted as *Bivens* does not extend to his Double Jeopardy claim against the marshal. As for Garrett's section 1983 claims against the Sheriff, the BCSO, and Bexar County, those claims are likewise subject to dismissal with prejudice for failure to state a claim upon which relief may be granted. Garrett failed to allege an individual acts by the Sheriff, the BCSO is a non–jural entity that is not subject to suit, and Garrett failed to allege the existence of a policy or custom with regard to his alleged constitutional violations against any of the county defendants.

**IT IS THEREFORE ORDERED** that Garrett's claims against the USMS and Deputy Marshal Rose in his official capacity (ECF Nos. 1, 5, 8, 13) are **DISMISSED WITHOUT PREJUDICE FOR WANT OF JURISDICTION**.

**IT IS FURTHER ORDERED** that Garrett's remaining claims (ECF Nos. 1, 5, 8, 13) are **DISMISSED WITH PREJUDICE** for failure to state a claim upon which relief may be granted. *See* 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b)(1).

It is so **ORDERED**.

**SIGNED** this 8th day of June, 2021.

_____
Xavier Rodriguez
United States District Judge

17